Approved: *Kimberly J. Ravener*
KIMBERLY J. RAVENER
Assistant United States Attorney

Before: HONORABLE MICHAEL H. DOLINGER
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

  - v. -

SAMY MOHAMED SARHAN, a/k/a
"Samy Mohamed Sabe Sarhan Elessawy,"

  Defendant.

- - - - - - - - - - - - - - - - - - - x

SEALED COMPLAINT

Violation of
18 U.S.C. §§ 1204(a),
371, and 2

COUNTY OF OFFENSE:
NEW YORK

15 MAG 3448

SOUTHERN DISTRICT OF NEW YORK, ss.:

WALTER WRIGHT, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
(International Parental Kidnapping)

1. From on or about May 5, 2015, in the Southern District of New York and elsewhere, SAMY MOHAMED SARHAN, a/k/a "Samy Mohamed Sabe Sarhan Elessawy," the defendant, willfully and knowingly removed a child, as that term is defined in Title 18, United States Code, Section 1204(b)(1), from the United States, and attempted to do so, and retained a child (who had been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights, and did aid and abet the same, to wit, SARHAN removed from the United States SARHAN's two children, ages six and three years' old, with intent to obstruct the lawful exercise of the children's mother's custodial rights.

(Title 18, United States Code, Sections 1204(a) and 2.)

1

**COUNT TWO**
(Conspiracy to Commit International Parental Kidnapping)

2. From at least on or about May 5, 2015, up to and including the present, in the Southern District of New York and elsewhere, SAMY MOHAMED SARHAN, a/k/a "Samy Mohamed Sabe Sarhan Elessawy," the defendant, and others known and unknown, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, international parental kidnapping, in violation of Title 18, United States Code Section 1204(a).

3. It was a part and an object of the conspiracy that SAMY MOHAMED SARHAN, a/k/a "Samy Mohamed Sabe Sarhan Elessawy," the defendant, and others known and unknown, would and did willfully and knowingly remove a child, as that term is defined in Title 18, United States Code, Section 1204(b)(1), from the United States, and retain a child (who had been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights.

**OVERT ACTS**

4. In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts were committed in the Southern District of New York and elsewhere:

a. Between approximately February 2015 and May 2015, an individual ("CC-1") associated with SAMY MOHAMED SARHAN, a/k/a "Samy Mohamed Sabe Sarhan Elessawy," the defendant, brought SARHAN's two children (the "Children") to Central Park in Manhattan on at least one occasion.

b. On or about May 5, 2015, CC-1 took the Children on a flight from Queens, New York to Cairo, Egypt.

c. In violation of a court order issued by the Queens Family Court on or about May 13, 2015, SARHAN retained the children in Egypt.

(Title 18, United States Code, Section 371.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

5. I am a Special Agent with the FBI assigned to the Crimes Against Children Squad. I have been working with the FBI for over twenty years. I have been personally involved in the investigation of this matter, and I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents and cooperating witnesses, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6. During the course of the investigation, I have learned that two children, ages six and three years' old (respectively, "Child-1" and "Child-2," and together, the "Children") were abducted from the United States on or about May 5, 2015 by another individual ("CC-1") acting in coordination with the Children's father, SAMY MOHAMED SARHAN, a/k/a "Samy Mohamed Sabe Sarhan Elessawy," the defendant. From my conversations with attorneys representing the Children's mother ("Victim-1"), my review of documents, and a sworn declaration by Victim-1, I have learned, in substance and in part, the following:

  a. Victim-1 and SARHAN had Child-1 in or about 2009 in Queens, New York.

  b. Victim-1 and SARHAN married in New York, New York on or about June 16, 2011.

  c. From in or around July 2009 to approximately April 2011, Child-1 resided with Victim-1 in Victim-1's country of origin, Mexico.

  d. Victim-1 and SARHAN had Child-2 in or about 2012 in Queens, New York.

  e. From in or around March 2013 to July 2014, the Children resided with Victim-1 in Mexico.

  f. During this time, Victim-1, a Mexican national, sought lawful permanent resident status in the United States. However, in or around March 2013, Victim-1 learned that

3

Victim-1 could no longer re-enter the United States because Victim-1 had previously overstayed a tourist visa.

   g. On or about July 21, 2014, Victim-1 voluntarily traveled with the Children from Mexico to meet SARHAN in Egypt, SARHAN's country of origin, for a vacation. Victim-1 expected the vacation to last approximately three months.

   h. Upon arrival, SARHAN confiscated Victim-1 and the Children's travel documents, including their passports and return plane tickets.

   i. During the visit to Egypt, SARHAN hit Victim-1 twice in the presence of the Children, leaving bruises and scratches on the neck of Victim-1.

   j. Eventually, on or about November 28, 2014, SARHAN permitted Victim-1 to leave Egypt for a brief period, without the Children, to visit Victim-1's ailing mother in Mexico.

   k. In or around December 2014, Victim-1 learned that SARHAN had married a second wife, CC-1.

   l. SARHAN dissuaded Victim-1 from returning to Egypt to join the Children, and informed Victim-1 that he would instead travel with the Children to New York for the purpose of completing a legal residence application for Victim-1 to travel to the United States.

   m. On or about February 20, 2015, SARHAN traveled with the Children to New York.

   n. Due to Victim-1's pending immigration issues, Victim-1 was unable to travel to New York to join the Children.

   o. SARHAN claimed to Victim-1 that he would return the Children to Mexico at the end of April 2015.

   p. Between approximately February 2015 and approximately May 2015, CC-1 brought the Children to Central Park in Manhattan on at least one occasion.

   q. SARHAN claimed to Victim-1 that he would return the Children to Mexico at the end of April 2015.

7.      From my review of records provided to me by law enforcement agents with United States Customs and Border Protection, airline records and travel agency records, I have learned that:

a.      On or about May 4, 2015, plane tickets for a flight departing the next day from New York to Cairo, Egypt were purchased for CC-1 and the Children. The purchase was made through a travel agency (the "Travel Agency") in a cash transaction.

b.      On or about May 5, 2015, CC-1 and the Children flew from John F. Kennedy Airport ("JFK") in Queens, New York to Cairo, Egypt via Egypt Air Flight 986 ("Flight-1").

8.      From my conversations with attorneys representing Victim-1, a sworn declaration by Victim-1, conversations with law enforcement agents who have interviewed Victim-1, and my review of Queens Family Court documents, I have learned, in substance and in part, the following:

a.      On or about May 5, 2015, SAMY MOHAMED SARHAN, a/k/a "Samy Mohamed Sabe Sarhan Elessawy," the defendant, informed Victim-1 that he would not voluntarily return the Children to the United States or Mexico.

b.      In or around May 2015, Victim-1 initiated a proceeding against SARHAN in Queens Family Court.

c.      On or about June 22, 2015, the Queens Family Court held a conference, noted that a writ of habeas corpus had issued on May 13, 2015, directing SARHAN to bring the Children to Court on May 18, 2015, and declared SARHAN in contempt of the court's order. An attorney for SARHAN represented that "the children are in Egypt."

d.      The Queens Family Court ordered SARHAN not to leave the jurisdiction, and re-issued the writ ordering SARHAN to produce the Children in court, with a new date of June 30, 2015.

e.      SARHAN surrendered his United States passport subject to a Queens Family Court order, but through his attorneys, represented that he did not have an Egyptian passport.

5

    f. On or about June 30, 2015, the Queens Family Court issued an arrest warrant for SARHAN after he failed to appear in court with the Children.

   9. From my review of records provided to me by law enforcement agents with United States Customs and Border Protection, airline records, and travel agency records, I have further learned that:

    a. On or about June 24, 2015, SAMY MOHAMED SARHAN, a/k/a "Samy Mohamed Sabe Sarhan Elessawy," the defendant, flew from JFK to Cairo, Egypt via Egypt Air Flight 986 ("Flight-2").

    b. SARHAN's ticket for Flight-2 was purchased in cash through the Travel Agency on or about June 22, 2015, the same day that SARHAN was held in contempt by the Queens Family Court.

    c. SARHAN traveled on Flight-2 under the name "Samy Mohamed Sabe Sarhan Elessawy," using an Egyptian passport.

   10. From my review of draft translations of tape-recorded conversations between SAMY MOHAMED SARHAN, a/k/a "Samy Mohamed Sabe Sarhan Elessawy," the defendant, and Victim-1, I have learned, in substance and in part, the following:

    a. On or around June 25, 2015, SARHAN told Victim-1 "I'm here now in my country with my kids, and fucking America, and the fucking judge, and the fuck you and fucking your lawyer, and fucking everybody. And you remember one thing; if you think you come in here in Egypt, I going to fuck yourself in here . . . . [D]on't think you going to come in in Egypt no more, because if you come in I going to kill you here."

    b. On or around June 30, 2015, SARHAN told Victim-1 "My kids never going to go America. . . . I broke the order to America, because I don't give a fuck. . . . You don't have kids . . . ."

    c. Throughout both conversations, SARHAN indicated to Victim-1 that Victim-1 would not see the Children again.

    d. Based on communications between Victim-1 and SARHAN, it appears that Sarhan and the Children now reside in Egypt.

     e. The Children have not as of this date been returned to Victim-1.

    WHEREFORE, deponent requests that a warrant be issued for the arrest of SAMY MOHAMED SARHAN, a/k/a "Samy Mohamed Sabe Sarhan Elessawy," the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

              _____
                WALTER WRIGHT
                SPECIAL AGENT
                FEDERAL BUREAU OF INVESTIGATION

Sworn to before me this
28th day of September, 2015

_____
HONORABLE MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK